IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HAFIZ DURBIN<br>　　　　Plaintiff<br>vs.<br>THE CITY OF PHILADELPHIA, PHILADELPHIA POLICE OFFICER STANLEY DAVIS, BADGE # 9660; PHILADELPHIA POLICE OFFICERS DOE 1-3, BADGE # UNKNOWN, Individually and in their capacity as police officers<br>　　　　Defendants | : JURY TRIAL<br>: DEMAND<br>:<br>: C.A. NO. 21-<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. Before his conviction was reversed, Hafiz Durbin spent 3 years imprisoned for narcotic related offenses that he did not commit.

2. Mr. Durbin who has maintained his innocence from the inception fought the charges from the date of his arrest on April 1, 2010 until his case was reversed on October 1, 2021.

3. Due to the fabrication of evidence and testimony by the Defendant police officers, a jury found Mr. Durbin was forced to plead guilty to narcotic related offenses and he was eventually sentenced by the Court to 1 ½ to 3 years of incarceration followed by another 3 years' probation.

4. This miscarriage of justice was the direct result of the egregious misconduct by the Defendant police officers of the Philadelphia Police Department. In particular, in order to make their case against Mr. Durbin, Defendants fabricate and misrepresented the information provided to authorities and in Court under oath which was used as a basis for probable cause to arrest and prosecute the Plaintiff.

5. This action arises under 42 U.S.C. § 1983 for claims involving the malicious prosecution of Mr. Durbin by the Defendants.

6. It involves police misconduct by the individual Defendants, in particular, the unlawful actions of the arresting Police Officer in this case –Stanley Davis, as well as the actions or inactions of Officer Davis' fellow police officers.

7. On December 16, 2016, after the conviction of Plaintiff, Stanley Davis was himself arrested and charged with knowingly and intentionally distributed a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance in violation of Title 21, United States Code, Section 841(a)(1),(b)(1)(c) to which he ultimately plead guilty on or about August 25, 2017.

8. Defendant Davis' arrest emanated from his liaisons with women whom he met in the course of his narcotic investigations and arrests where he gave them drugs (heroin, crack, cocaine) in exchange for sex.

9. Despite this revelation, the Philadelphia District Attorney's Office concealed this fact and failed to turn over this evidence of police misconduct to defense attorneys until the matter was exposed in the media.

10. The Philadelphia District Attorney's Office continued to use Defendant Davis in the prosecution of criminal cases until his arrest in 2016.

11. On April 9, 2018, Defendant Davis plead guilty and was sentenced to 18 months' incarceration in a federal prison, 3 years' supervised release and a $4,000 fine.

12. Plaintiff now brings this action under 42 U.S.C. §1983 seeking redress for

the extraordinary misconduct of a Philadelphia police officer who used improper and unconstitutional means to secure search warrants by deception and misrepresentation, search persons and property, and subject citizens to unlawful arrest, detention and prosecution, as well as used his position of power as a police officer to gratify his own impulses.

13. Further, as detailed below, Mr. Durbin's wrongful conviction was the direct result of the unconstitutional and otherwise improper policies, practices, and customs of the Philadelphia Police Department, including all the Narcotics Units, which for a period starting as early as the 1980's and continuing through the investigation and arrest in this case and for years thereafter, evidences deliberate indifference by the Defendant City of Philadelphia to practices of fabrication of evidence, suppression of exculpatory evidence, and abuse of authority.

## II. JURISDICTION

14. This action is brought pursuant to 42 U.S.C. §§ 1331 and 1343(1), (3), (4) and the aforementioned statutory provision.

## III. PARTIES

15. Plaintiff, Hafiz Durbin is an adult male who was at all times relevant to its Complaint, a resident of Philadelphia, Pennsylvania.

16. Defendant City of Philadelphia is a City of the First Class in the Commonwealth of Pennsylvania and at all times relevant hereto operated under the color of state law in creating and maintaining a Police Department, was the employer of all Defendants and had the responsibility of adopting policies, implementing

procedures and practices which would create an environment whereby citizens would be safe from police abuse.

17. Defendant Davis, Badge number 9660, is and was at all times relevant to this Complaint, a police officer for the City of Philadelphia and acting under the color of state law. He is being sued in both his individual and official capacities.

18. Defendant Does 1-3, Badge numbers unknown, are and were at all times relevant to this Complaint, police officers for the City of Philadelphia and acting under the color of state law. They are being sued in both their individual and official capacities.

**IV. FACTS**

19. For more than twenty years, Philadelphia police officers assigned to various narcotics units have engaged in a pattern and practice of securing search warrants based on fraud and misrepresentation, the misuse of informants, the improper execution of search warrants, the falsification of evidence, the destruction and theft of personal property, and related misconduct.

20. Not only has the City of Philadelphia has failed to take appropriate remedial measures to prevent misconduct of this nature, it has adopted an official policy that helps foster such misconduct.

21. In January 2009, the Philadelphia Police Department implemented a written policy that requires supervisors to remove from all police paperwork the names of police witnesses who possess exculpatory information. In pertinent part, that policy states:

> Platoon commanders will be required to review and initial all
> Arrest and investigative reports, including PARS reports, to

>Ensure that only those officers/investigators who are
>Necessary for the successful outcome of the case are listed.

See Memorandum (09-01)(the "Policy"), §III. A. (1).

22. Pursuant to the Policy, Police supervisors are required to remove from all police paperwork the names of any police officer that witnessed events, which would be useful by a defendant in a criminal case, because such officers would not "ensure" a "successful outcome". In other words, the City of Philadelphia, by and through its Police Department, officially adopted a written policy to enforce a code of silence or "blue code", which prohibits Officers from intervening or providing truthful information against constitutional violations and other unlawful misconduct committed by their fellow Officers.

23. That "successful outcome" means conviction is further evinced by the fact that the Standard Operating Procedures implementing the Memorandum state that "only those officers necessary for prosecution will be subpoenaed to court".

24. Philadelphia Police Department Commissioner Charles Ramsey's implementation of the written policy, just memorialized what had been an unofficial policy and/or custom of the Philadelphia Police Department at the time Plaintiff was arrested and before.

XXXXXXXXX

25. On April 1, 2010, some and/or all of the Defendant Officers were engaged in purported narcotic trafficking surveillance around Street, Philadelphia Pennsylvania.

22. On or about that date, Defendant Hulmes claimed to have observed Plaintiff engage in a transaction of narcotics.

23. According to Defendant Hulmes, Plaintiff acted in concert with other individuals in that area who were involved in purported narcotic sales.

24. Plaintiff was arrested and charged with narcotic related offenses.

25. No narcotics were confiscated from Plaintiff.

26. The Defendant Officers and other officers all gave false statements concerning the incident described in the complaint.

27. Defendant Hulmes and other officers prepared and caused to be prepared police paperwork misrepresenting the events that led to the arrest of the Plaintiff for the incident described in this complaint. Those misrepresentations included, but were not limited to:

    a. That they had probable cause to arrest the Plaintiff;

    b. That Plaintiff possessed narcotics; and

    c. That Defendant Officers lied about the times of their activities; the times indicated in their reports of events which did not occur; this was done to conceal their illegal activities.

28. Defendant Officers were aware of exculpatory information about the Plaintiff.

29. The Defendant Officers failed to provide exculpatory information known to them to the Plaintiff or his criminal counsel via police paperwork or any other means after the arrest.

30. The exculpatory information known to police that was not provided to the Plaintiff included the real facts and circumstances of the incident.

31. The misrepresentations contained in the affidavit of probable cause, arrest report and property receipts were material to the probable cause determination of the arrest; indeed, without these allegations, the probable cause required for Plaintiff's arrest contain no cause or reason to warrant the arrest and/or prosecution.

32. All the Defendants provided prosecutors from the Philadelphia District Attorney's Office with false, misleading, and incomplete information regarding their investigation in this case in an effort to obtain the District Attorney's Office's approval for Mr. Taveras' prosecution.

33. Mr. Taveras has maintained his innocence and adamantly denying any role in the crime. He denies his involvement in the possession of narcotics.

34. On December 19, 2014, Plaintiff plead guilty to narcotic related crimes. On February 20, 2015, the Court sentenced the Plaintiff to a term of 23 months incarceration and 3 years' probation. On June 16, 2015, the Court sentenced Plaintiff to an additional 1 to 2 years' incarceration.

35. In December 2011, Defendant Hulmes admitted in open court that he falsified information in a drug arrest. The presiding judge in that case dismissed all charges against the Defendant because Defendant Hulmes lied about the information he testified to in that case. *Commonwealth v. Rowland*, CP-51-CR-0007188-2010.

36. Despite this revelation that Defendant Hulmes falsified information under oath, the Philadelphia District Attorney's Office continued to use him as a witness in criminal cases over the course of the next 4 years.

37. In December 2013, the Philadelphia District Attorney's office again was alerted to the fact that Defendant Hulmes had provided false and misleading

information regarding a prior narcotics investigation and arrest. This time, the person providing the information was one of the Philadelphia District Attorney Office's own prosecutor. The Assistant Attorney informed his superiors that he was uncomfortable with eliciting testimony from Defendant Hulmes because of the prior admission that he lied under oath.

38. The District Attorney was summarily terminated from employment.

39. On April 23, 2015, Defendant Hulmes was arrested and charged on multiple counts of: perjury, false swearing, false reports, tampering with public records and unsworn falsification to authorities.

40. On June 17, 2016, Defendant Hulmes plead guilty to perjury, tampering with public record, obstruction of administration of law, false swearing, unsworn falsification to authorities and false reporting charges.

41. The Philadelphia District Attorney's Office agreed to the extraordinarily lenient deal by allowing Defendant Hulmes enter a pretrial diversion Program for first offenders.

42. On June 19, 2015, the Philadelphia Public Defender's Office filed a Post-Conviction Relief Act (PCRA) petition on behalf of Mr. Taveras as a result of the Defendant Hulmes' arrest and conviction.

43. On December 6, 2019, after spending over 2 years incarcerated, upon review of the evidence in Plaintiff's criminal case and *without objection,* the Philadelphia District Attorney's Office agreed to *Nolle Prosse* Plaintiff's February 20, 2015 and June 16, 2015 convictions.

44. By Court Order, Mr. Taveras' conviction was overturned and reversed resulting in a favorable termination of the criminal proceedings against Mr. Taveras and thus ending the proceeding in his favor. See *Heck v. Humphrey*, 512 U.S. 477 (1994).

45. The Defendant officers, acting in concert and conspiracy, caused the Plaintiff to be arrested, subjected to false criminal charges, malicious prosecution and prolonged detention by falsifying information in the arrest report, the 75-49, and at the preliminary hearing; failing to disclose to prosecutors the fact that the information provided to the authorities in support of the arrest was false and misleading, the information in supporting police documents was false and misleading and his testimony at trial was false and misleading; fabricating evidence to support the claim that the Plaintiff was involved in criminal activity, and failing to disclose other exculpatory evidence regarding these criminal charges.

46. The only evidence leading to Plaintiff's conviction was derived from the false and misleading information provided by the Defendant Hulmes and/or other police officers.

47. For many years dating back at least to the 1980's, and continuing well beyond the time of the investigation, arrest and prosecution of Mr. Taveras, the City of Philadelphia, had in force and effect a policy, practice, or custom of unconstitutional misconduct in the Narcotic's Units, including the Narcotics Strike Force, and in particular, fabricating inculpatory evidence and withholding exculpatory evidence.

48. This policy, practice, or custom of "articulating" (falsifying) information to create probable cause to arrest and prosecute individuals otherwise innocent of the crime while concealing the police officers own improper and illegal conduct was pervasive.

49. This policy, practice, or custom also involved various techniques by Narcotics police officers to make false statements and testimony at trial appear true and reliable.

50. These practices were well known to the City of Philadelphia and its policymakers with respect to narcotics investigations and prosecutions as a result of newspaper investigations, prosecutors from the Philadelphia District Attorney's Office, governmental investigations, complaints from lawyers and civilians, internal police investigations and hundreds of lawsuits filed against police officers from various narcotics units.

51. Various cases demonstrate that this misconduct was pervasive within the Philadelphia Police Department at the time of Mr. Taveras' arrest and prosecution, and upon information and belief, the misconduct described below was committed with the knowledge of Philadelphia Police Department supervisors or because of their deliberate indifference to this misconduct.

52. At the time of this incident, and for some years before, law enforcement at the highest levels knew of integrity, corruption, and civil rights violation issues involving Defendant Hulmes. Federal agents and federal prosecutors knew. The current Philadelphia Police Commissioner, his predecessors, and some of his subordinates knew. Former District Attorney Lynn Abraham and some of her

subordinates, as well as her successor, former District Attorney Seth Williams knew. The basis of this knowledge was information from multiple sources including, but not limited to, federal investigations, questions raised by state and federal prosecutors, judges and other sources.

53. The foregoing conduct of Defendant Hulmes, acting under the color of state law, was undertaken in concert and conspiracy and as part of an effort to maliciously prosecute and otherwise deprive Plaintiff of his civil and constitutional rights including Plaintiff's rights, privileges and immunities under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Pennsylvania.

54. Plaintiff did not commit any offenses against the laws of the Commonwealth of Pennsylvania, the United States or the City of Philadelphia, or engage in any conduct which justified the actions of all Defendants. Plaintiff maintained his innocence of the charges brought against him.

55. The detention and malicious prosecution in this case were the direct result of all Defendant Officers' pattern, practice and custom of subjecting citizens such as the Plaintiff to arrest, prosecution and incarceration in the absence of probable cause.

56. The Defendant officers acted willfully, deliberately, maliciously or with reckless disregard of the Plaintiff's constitutional and statutory rights.

57. As a direct and proximate result of the actions of all Defendant Officers, the Plaintiff suffered and continues to suffer physical and psychological harms, pain and suffering, damage to reputation, some or all of which may be permanent, as well as financial losses.

58. As a direct and proximate result of the actions of all Defendants Officers, the Plaintiff suffered his loss of liberty by being incarcerated for over two (2) years.

59. All Defendant Officers engaged in the aforesaid conduct for the purpose of violating the Plaintiff's constitutional rights by subjecting the Plaintiff to malicious prosecution, and prolonged detention.

60. The actions and conduct of the Defendant Officers were caused by a policy, practice and custom of Defendant City of Philadelphia of failing, with deliberate indifference, to supervise, monitor, and properly train narcotics officers with respect to (a) their duty to provide only truthful information in securing search and arrest warrants, (b) their duty to ensure that relationships and dealings with confidential informants and/or sources are in accord with Police Department policy and constitutional commands, (c) their duty to disclose exculpatory evidence in criminal cases, (d) their duty not to undertake arrests in the absence of lawful grounds, (e) their duty to provide accurate and truthful information to the prosecutor's office, (f) their duty to report and disclose misconduct and illegal actions of other police officers, (g) the proper execution of search warrants and/or involve the destruction or theft of property or evidence, and (h) the fabrication of evidence against an accused to justify their illegal actions and conduct.

61. Defendant City of Philadelphia has failed to properly discipline Defendant Hulmes and other officers in the Police Department in cases involving violations of rights of civilians, including cases of improper searches, seizures, arrests, and prosecutions, thereby causing the violations in this case.

62. The above described actions of all of the Defendants caused the violations of the Plaintiff's rights under the Fourth and Fourteenth Amendment as alleged in this complaint.

## FIRST CAUSE OF ACTION
## FEDERAL CIVIL RIGHTS VIOLATIONS

63. The allegations set forth in paragraphs 1-62 inclusive, are incorporated herein as if fully set forth.

64. As a direct and proximate result of Defendants' above described unlawful and malicious conduct, committed under the color of state law, and while acting in that capacity, the Defendants deprived Plaintiff of his privileges and immunities under the laws and the Constitution of the United States. Plaintiff's right to be free from malicious prosecution and to be secure in one's person and property, all to Plaintiff's great detriment and loss. As a result, Plaintiff suffered grievous harm, in violation of his rights under the laws and Constitution of the United States in particular the Fourth and Fourteenth Amendments thereof, and 42 U.S.C. § 1983.

65. As a direct and proximate result of the acts and omissions of Defendants, Plaintiff was forced to endure great pain and mental suffering, and was deprived of physical liberty, all to Plaintiff's great detriment and loss.

66. The City of Philadelphia permitted, encouraged, tolerated, ratified and was deliberately indifferent to a pattern, practice and custom of:

    a. Unjustified, unreasonable and illegal use of process by police officers;
    b. Abuse of police powers, including malicious prosecution, harassment and improper searches;
    c. Misrepresenting facts in order to establish probable cause where none would otherwise exist;
    d. Arresting and incarcerating citizens without probable cause solely for the purpose of committing citizens to prison with no intention of

   seeking criminal prosecutions;
  e. Psychologically or emotionally unfit persons serving as police officers; and
  f. Failure of police officers to prevent, deter, report or take action against the unlawful conduct of police officers, in particular those police officers who fabricate information and evidence used to prosecute citizens innocent of the crimes they are accused and prosecuted for.

  67. Defendant City of Philadelphia has encouraged, tolerated, ratified and has been deliberately indifferent to the following patterns, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

  a. Unlawful detentions, unlawful searches, unlawful arrests and prosecutions without probable cause by police officers;
  b. The proper exercise of police powers, including but not limited to the use of false information to obtain search warrants, fabrication of evidence, unlawful arrest, unlawful searches, malicious prosecution and unlawful detention;
  c. The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;
  d. The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;
  e. Police officers' use of their status as police officers to employ the use of unlawful search and/or arrest, or to achieve ends not reasonably related to their police duties;
  f. Police officers' use of their status as police officers to employ the use of unlawful arrest, invoke the Code of Silence, or to achieve ends not reasonably related to police duties;
  g. The failure of police officers to follow established policies, procedures, directives and instructions regarding the securing of search warrants and the use of arrest powers under such circumstances as presented in this case;
  h. The refusal of police officers to intervene when other officers violate the rights of citizens in their presence;
  i. The failure to identify and take remedial or disciplinary action against units of officers assigned to narcotics investigations in light of repeated instances of misconduct over a period of many years as alleged in this Complaint; and
  j. The refusal of police officers to report or provide information concerning the misconduct of other police officers, a custom or practice known as the "Code of Silence."

68. Defendant City of Philadelphia failed to properly train, supervise or discipline officers assigned to narcotics units of the Philadelphia Police Department who have engaged over a period of many years in systematic abuses of authority, including but not limited to: (a) the duty to provide only truthful information in securing search and arrest warrants, (b) the duty to ensure that relationships and dealings with confidential informants are in accord with Police Department policy and constitutional commands, (c) the duty to disclose exculpatory evidence in criminal cases, (d) their duty not to undertake arrests in the absence of lawful grounds, (e) the duty to provide accurate and truthful information to the prosecutor's office, (f) the duty to report and disclose misconduct and illegal actions of other police officers, (g) the improper execution of search warrants, and in particular prohibitions on searches that go beyond those authorized by the warrant, and/or involve the destruction or theft of property or evidence, and (h) the fabrication of evidence against an accused to justify their illegal actions and conduct.

69. Defendant City of Philadelphia failed to properly sanction or discipline officers, who are aware of and conceal and/or aid and abet violations of constitutional rights of individuals by other Philadelphia Police Officers, thereby causing and encouraging Philadelphia police, including the Defendant officers in this case, to violate the rights of citizens such as the Plaintiff.

70. Defendant City of Philadelphia is deliberately indifferent to the need to train, supervise and discipline police officers. The Internal Affairs Division (IAD) of the Philadelphia Police Department (PPD) fails to provide an internal disciplinary

mechanism that imposes meaningful disciplinary and remedial actions in the following respects:

    a. There are excessive and chronic delays in resolving disciplinary complaints;
    b. There is a lack of consistent, rational and meaningful disciplinary and remedial actions;
    c. There is a failure to effectively discipline substantial numbers of officers who were found to have engaged in misconduct.
    d. The PPD's internal investigatory process has fallen below accepted practices and is arbitrary and inconsistent;
    e. The PPD discipline, as practiced, is incident based rather than progressive. Thus, repeat violators are not being penalized in proportion to the number of violations.
    f. The conduct of IAD investigations demonstrates that PPD internal affairs personnel are not adequately trained and supervised in the proper conduct of such investigations;
    g. A global analysis of IAD's investigatory procedures indicates a pattern of administrative conduct where the benefit of the doubt is given to the officer rather than the complainant;
    h. There are serious deficiencies in the quality of IAD investigations and the validity of the IAD findings and conclusions;
    i. The PPD lacks an effective early warning system to identify, track and monitor "problem" officers.
    j. Despite the fact that the Defendant officer had amassed an exceptionally large number of serious misconduct complaints, the officer stayed well below the radar of an early warning system;
    k. Despite numerous prior complaints against the Defendant officer, the PPD took no meaningful disciplinary or remedial actions;
    l. Despite numerous prior complaints against the Defendant officer, the PPD took no meaningful steps to more closely monitor, retrain and supervise the officer;
    m. IAD frequently fails to interview available eyewitnesses to incidents involving citizen complaints of misconduct. The interviews that are conducted by IAD are below acceptable standards of police practice and fail to address key issues in the cases; and
    n. IAD fails to acknowledge those cases where police officers fabricate evidence to justify the arrest and prosecution in the investigation of citizen complaints and fails to properly categorize the police officers' misconduct in those cases as an impermissible use of their police powers.

    71. The City of Philadelphia was deliberately indifferent to the need for more or different training, supervision, investigation or discipline in the areas of:

      a. Use of information in obtaining probable cause;
      b. Exercise of police powers;
      c. Police officers with emotional or psychological problems;
      d. Police officers use of their status as police officers to have persons falsely arrested and maliciously prosecution and unlawfully searched or to achieve ends not reasonably related to their police duties; and
      e. False arrest, malicious prosecution and evidence planting of citizens.

72. The City of Philadelphia failed to properly sanction or discipline officers, who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other police officers, thereby causing and encouraging police officers, including Defendants Hulmes and Does in this case, to violate the rights of citizens such as Plaintiff.

73. The City of Philadelphia failed to properly sanction or discipline officers and acquiesced to the Defendant officers' unlawful conduct after becoming aware that these particular officers engaged in the aforementioned conduct in cases dating back to 2011 while concealing and/or aiding and abetting in the violations of constitutional rights of citizens by this police officer, thereby causing and encouraging police officers, including Defendant Hulmes and Does in this case, to violate the rights of citizens such as Plaintiff.

74. There has been a longstanding history, which has been extensively documented since the 1980s, of Philadelphia Police Officers engaging in rampant illegal conduct in narcotics investigations. A non-exhaustive list of such conduct includes:

      a. In the early 1980s, in the "One Squad Scandal" a group of Philadelphia narcotics Officers were convicted of selling drugs that they had stolen from dealers;
      b. During the decade between 1980-1989, a lieutenant and three officers from another drug unit, the "Five Squad" engaged in conduct including the theft of drugs and over $280,000.00 that resulted in federal convictions for, *inter*

    *alia*, racketeering;

  c. In or around February 1995, Philadelphia Police Officer John Baird and five other members of the 39th District were federally prosecuted and ultimately sentenced for violating the rights of, and stealing money from, over 40 Philadelphians. These Officers planted drugs on innocent individuals, conducted unreported raids, and stole from suspects;

  d. In 1997, federal drug convictions were overturned as a result of a 1998 internal affairs finding that narcotics officer John Boucher was a potentially corrupt police officer;

  e. In the last five years, numerous narcotics officers – including, as described *supra*, some and/or all of the Defendant Officers in this matter – have engaged in conduct causing them to have been removed from the narcotics assignments. In the last five years, as a result of a series of articles by Philadelphia Daily news reports known as "tainted Justice", Philadelphia Police Officers Jeffrey Cujdik, Richard Cujdik, Robert McDonnell, Thomas Tolstoy, Joseph Bologna and Thomas Dealer have all been assigned to either desk duty or non-narcotics related assignments. These officers engaged in raids of small convenience shops in Philadelphia in which they disabled surveillance systems to hide their conduct, which included theft of cash and groceries. Jeffrey Cujdik routinely alleged criminal behavior in search warrants involving confidential informant who subsequently denied having provided information or services on many of the cases in which Cujdik affirmed he had;

  f. In May of 2013, Philadelphia Police Officer Jeffrey Walker was arrested and charged in the United States District Court for the Eastern District of Pennsylvania for acts including, *inter alia*, "by means of actual or threatened force or violence or fear of injury, immediate and future to the victim's person, and by use of firearm; and by use of his position as a Philadelphia Police Officer, did obtain personal property, cash and marijuana unlawfully . . . ." The criminal complaint against Defendant Walker described flagrant manner in which he unwittingly disclosed to an FBI informant his practiced schemes to rob drug dealers of both drugs and money. He described the manner in which he would confiscate a large portion of a drug dealer's drugs for himself and report only a small portion of what he actually found in the police report. In addition, he described a scam to plant drugs in a drug dealer's car so that he could arrest the drug dealer, take the drug dealer's keys, and then use the dealer's keys to enter the drug dealer's apartment and steal money.

  g. In September 2016 and over the course of 5 days in September and October 2016, former Narcotics Field Unit police officer Jeffrey Walker testified at deposition to matters regarding corruption in the Philadelphia Police Department, and in particular the Narcotics Units including the falsification of information and testimony by Narcotic police officers in order to "articulate" the probable cause basis when no probable cause actually exists. He testified that the supervisors either knew or acquiesced to this unlawful conduct.

75. Defendant City of Philadelphia continued to permit, acquiesce, encourage, tolerate, ratify and has been deliberately indifferent to the unconstitutional acts and omissions by the Defendant officers despite the aforementioned allegations, investigations and Court holdings for years.

76. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger or harm to citizens like the Plaintiff and the need for more or different training, investigation and discipline are policies and customs of the City of Philadelphia and have caused police officers, including Defendant Hulmes and Does in this case, to believe that he can violate the rights of citizens, with impunity, including the use of fraud and falsehood and to believe that such conduct would be honestly and properly investigated, all with the foreseeable result that officers are more likely to violate the constitutional rights of citizens.

77. The actions of all Defendants, acting under the color of state law and/or in concert or conspiracy with each other, deprived Plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States, in particular, the rights to be secure in one's person and property and to be free from malicious prosecution.

78. Defendants, City of Philadelphia and Defendant Hulmes and Does acting in concert and conspiracy with each other, have by the aforementioned actions deprived Plaintiff of his constitutional and statutory rights.

79. By these actions, all Defendants have deprived Plaintiff of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff, Rudy Taveras prays as follows:

a. The Court award compensatory damages to Plaintiff and against all Defendants, jointly and severally, in an amount to be determined at trial;

b. The Court award punitive damages to Plaintiff, and against all individual Defendants in their individual capacity, in an amount to be determined at trial, that will deter such conduct by Defendants in the future; and

c. For any and all other relief to which Plaintiff may be entitled.

## JURY DEMAND

88. Plaintiff demands a jury trial as to each Defendant and as to each count.

*/s/ Michael Pileggi*
MICHAEL PILEGGI, ESQUIRE
303 Chestnut Street
Philadelphia, PA 19106
Counsel for Plaintiff